GREENBERG TRAURIG, LLP
Rebekah S. Guyon (SBN 291037)
*Rebekah.Guyon@gtlaw.com*
Blake M. Bailus (SBN 360713)
*BailusB@gtlaw.com*
Ryan Ghassemi (SBN 359542)
*Ryan.Ghassemi@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Attorneys for Defendants
Citizens Financial Group, Inc., and
Citizens Bank, N.A.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL DAWKINS, on behalf of himself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>CITIZENS FINANCIAL GROUP, INC., a Delaware corporation; and CITIZENS BANK, NATIONAL ASSOCIATION, a national banking association,<br><br>Defendants. | Case No. 1:26-cv-03933-KES-EGC<br><br>**DEFENDANTS CITIZENS FINANCIAL GROUP, INC., AND CITIZENS BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Request for Judicial Notice; Declaration of Rebekah S. Guyon filed concurrently]<br><br>Assigned to: Hon. Kirk E. Sherriff<br><br>Date: November 2, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6<br><br>Action Filed: May 21, 2026 |

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 2, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Kirk E. Sherriff, United States District Judge, Eastern District of California, located at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721, Courtroom 6, Defendants Citizens Financial Group, Inc. and Citizens Bank, N.A. (collectively, "Citizens") will, and hereby do, move the Court for an order dismissing the Complaint filed by Plaintiff Samuel Dawkins pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has not pled a concrete harm under Article III, and because Dawkins fails to state a claim against Citizens upon which relief may be granted.

Citizens seeks an order dismissing Dawkins's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction because Dawkins does not allege an Article III injury. This threshold jurisdictional defect requires dismissal of the Complaint. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ."). Should the Court reach the merits of Dawkins's claims, however, Citizens seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) because Dawkins fails to allege sufficient facts to state a plausible claim on the following grounds:

(1) Dawkins fails to state a claim for a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*. ("Wiretap Act") because the Wiretap Act is a one-party consent statute, and Citizens consented to its use of marketing and analytics tools on its own website.

(2) Dawkins's claims for violations of the Wiretap Act and Section 631 of the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* ("CIPA") fail because he does not allege any third party intercepted the contents of his interactions while "in transit," and his CIPA § 631 claim fails for the additional reason that he does not allege that Citizens aided and abetted unlawful conduct by third parties.

(3) Dawkins's claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") fails because he does not allege the loss of money or property or the absence of adequate legal remedies.

(4) Dawkins's claims for invasion of privacy and intrusion upon seclusion fail because he has no reasonable expectation of privacy in his allegedly intercepted interactions with Citizens's website, and because the alleged disclosure of URLs that he visited is not a "highly offensive" breach of social norms.

(5) Dawkins fails to state a claim for unjust enrichment because he does not allege the absence of adequate legal remedies, and because this claim is impermissibly duplicative of his other claims.

In accordance with Section I(C) of the Court's Standing Order in Civil Cases, counsel for Citizens certifies that this Motion is made after the conference of counsel, which took place via videoconference on Thursday, September 3, 2026. Prior to this, counsel for Citizens sent an email addressing in-depth the issues to be raised in the Motion, and offered counsel for Dawkins an opportunity to discuss Citizens's contention that the Complaint does not allege facts plausibly showing the collection and disclosure of information giving rise to an Article III injury-in-fact, or how any such collection and disclosure states a claim. Counsel for Citizens emphasized, in particular, the likelihood of success in obtaining dismissal of Dawkins's UCL claim. Dawkins's counsel disagreed and invited Citizens to file its Motion, explaining that a decision to amend the Complaint or file an opposition will be made after Citizens files its Motion.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the concurrently filed Declaration of Rebekah S. Guyon and Request for Judicial Notice, and all pleadings, arguments, and matters before the Court.

Dated: September 10, 2026

GREENBERG TRAURIG, LLP

By: */s/ Rebekah S. Guyon*
Rebekah S. Guyon
Attorneys for Defendants
Citizens Financial Group, Inc., and
Citizens Bank, N.A.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF RELEVANT FACTS ..... 3

III. DAWKINS HAS NOT ALLEGED AN ARTICLE III INJURY-IN-FACT ..... 4

- A. Standard For Motions To Dismiss Pursuant To Rule 12(b)(1) ..... 4
- B. Constitutional Requirements For Standing ..... 5
- C. Dawkins Does Not Allege A Concrete Injury. ..... 5
  - 1. Dawkins Alleges No Sensitive Information Giving Rise to Standing. ..... 6
  - 2. Dawkins Alleges No Highly Offensive Conduct Required For Standing ..... 9
  - 3. Dawkins's Remaining Theories Of Injury Fail. ..... 11

IV. DAWKINS FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ..... 13

- A. Standard For Motions To Dismiss Pursuant To Rule 12(b)(6) ..... 13
- B. Citizens's Consent Requires Dismissal of Dawkins's Wiretap Act Claim. ..... 13
- C. Dawkins Fails To Allege A Wiretapping Claim Under The Wiretap Act Or CIPA § 631 ..... 14
  - 1. The First Clause Of CIPA § 631(a) Does Not Apply Online. ..... 14
  - 2. Dawkins Does Not Allege That Citizens's Providers Intercepted A Communication While "In Transit" In Violation Of The Wiretap Act And The Second Clause Of CIPA § 631(a). ..... 14
  - 3. With No Claim Under CIPA § 631(a)'s First Or Second Clause, Dawkins Cannot Assert A Claim Under The Third. ..... 15
  - 4. Dawkins Does Not Allege Unlawful Knowledge Or Intent By Citizens Under CIPA § 631(a). ..... 15
- D. Dawkins's UCL Claim Fails Because He Does Not Allege the Loss of "Money or Property." ..... 16
- E. Dawkins's Invasion of Privacy And Intrusion Upon Seclusion Claims Fail. ..... 18
- F. Dawkins Fails To Allege Unjust Enrichment. ..... 19

V. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............ 13

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ............ 10, 19

*Baiul-Farina v. Lemire*,
804 F. App'x 533 (9th Cir. 2020) ............ 19

*Banks v. R.C. Bigelow, Inc.*,
536 F. Supp. 3d 640 (C.D. Cal. 2021) ............ 18, 20

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............ 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............ 13

*Belluomini v. Citigroup, Inc.*,
No. 13-cv-1743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ............ 18

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............ 17

*In re Blue Shield of California Priv. Litig.*,
— F. Supp. 3d —, 2026 WL 2040561 (N.D. Cal. Jul. 10, 2026) ............ 16

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ............ 14

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) (C.D. Cal. Feb. 14, 2023) ............ 1, 2

*Campbell v. Select Med. Corp.*,
No. 25-cv-11408, 2026 WL 2056651 (C.D. Cal. July 14, 2026) ............ 8

*Carolus v. Nexstar Media Inc.*,
No. 24-cv-7790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ............ 12

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............ 16

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ............ 9, 19

*Crano v. Sojern, Inc.*,
No. 25-cv-2600, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......... 14, 15

*Dawidzik v. Tesla, Inc.*,
No. 25-cv-1982, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 11, 12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 2, 13, 20

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 2, 6, 15

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018) .......... 4

*Elmarouk v. FMR LLC*,
No. 3:26-cv-02876 (N.D. Cal. Apr. 2, 2026), ECF No. 1 .......... 4

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-0102, 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) .......... 16

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 12

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) .......... 17

*In re Facebook, Inc. Internet Tracking Lit.*,
956 F.3d 589 (9th Cir. 2020) .......... 7

*Frye v. Ass'n of State & Provincial Psych. Boards*,
No. 25-cv-236, 2026 WL 861636 (E.D. Cal. Mar. 30, 2026) (Sherriff, J.) .......... 19

*FTC v. Pantron I Corp.*,
33 F.3d 1088 (9th Cir. 1994) .......... 11

*Garcia v. Blackhawk Network, Inc.*,
No. 25-cv-7550, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 6, 9, 10, 11

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 10

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 9, 18

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
729 F. Supp. 3d 989 (C.D. Cal. 2024) .......... 19

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 11, 12

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 2, 15, 16

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 14

*Herzman v. Smile Brands Inc.*,
No. 25-cv-3400, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) .......... 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 19

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 5, 6, 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 14

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 13

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 14, 15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 12, 17, 19

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-cv-2394, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 9

*Magliocca v. United Healthcare Servs., Inc.*,
No. 25-cv-3388, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) .......... 8, 9, 11

*Malko v. GNC Holdings, LLC*,
No. 26-cv-1833, 2026 WL 2218133 (C.D. Cal. July 29, 2026) .......... 8, 11, 12

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 16

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 11

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 8

*Morales v. Conifer Revenue Cycle Sols., LLC*,
No. 23-cv-01987, 2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) .......... 17

*Munning v. Gap, Inc.*,
238 F. Supp. 3d 1195 (N.D. Cal. 2017) .... 18

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .... 10

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .... 13

*Perez v. Romantix Online, Inc.*,
No. 25-cv-2465, 2026 WL 1802589 (N.D. Cal. June 23, 2026) .... 6

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .... 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .... 1, 5, 6, 7

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) .... 7

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) .... 17

*Reese v. Wal-Mart Assocs., Inc.*,
No. 24-cv-1092, 2025 WL 472721 (E.D. Cal. Feb. 12, 2025) (Sherriff, J.) .... 2, 18, 20

*Rodriguez v. Accident Fund Holdings, Inc.*,
No. 25-cv-3920, 2026 WL 2365062 (C.D. Cal. Aug. 13, 2026) .... 2, 9, 19

*Rodriguez v. Brushfire Recs.*,
No. 25-CV-9797, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .... 10

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .... 7

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .... 16

*Roe v. Amgen Inc.*,
No. 23-cv-7448, 2024 WL 2873482 (C.D. Cal. June 5, 2024) .... 13, 17

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 24-cv-6525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .... 13

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .... 10

*Sanchez v. Sams W., Inc.*,
No. 21-cv-5122, 2021 WL 8531592 (C.D. Cal. Dec. 23, 2021) .... 18

*Schallert v. Laird Superfood, Inc.*,
No. 25-cv-12407, 2026 WL 1707585 (C.D. Cal. June 5, 2026) ........ 7, 8

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) ........ 4

*Shah v. Drexel Chem. Co.*,
No. 26-cv-1605, 2026 WL 2602923 (C.D. Cal. Sept. 1, 2026) ........ 9

*Shah v. Talentbridge, Inc.*,
No. 26-cv-222, 2026 WL 1507888 (C.D. Cal. May 28, 2026) ........ 9

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ........ 18

*Sisti v. Bosley Inc.*,
831 F. Supp. 3d 979 (C.D. Cal. 2026) ........ 12

*Smith v. YETI Coolers, LLC*,
No. 24-cv-01703, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ........ 16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 2, 17, 18, 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 5

*Straight v. Edfinancial Servs., LLC*,
No. 26-cv-1807, 2026 WL 2087412 (N.D. Cal. July 20, 2026) ........ 7, 10

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
830 F. App'x 821 (9th Cir. 2020) ........ 5

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 13

*Timothee v. Meta Platforms, Inc.*,
No. 25-cv-5106, 2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) ........ 10

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-7465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 15

*Torres v. Seatgeek, Inc.*,
No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026)
........ 7, 9, 10, 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5, 11

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 14, 16

*Valenzuela v. The Kroger Co.*, No. 22-cv-6382, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 15, 16

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .......... 5

*Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 6, 7, 11

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 6

*Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 2

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 19

**State Cases**

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011) .......... 10, 17

*Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1 (1994) .......... 18

*Tavernetti v. Super. Ct.*, 22 Cal. 3d 187 (1978) .......... 14

**Federal Statutes**

18 U.S.C. § 2511 .......... 13

**State Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* .......... 2

Cal. Penal Code § 630 *et seq.* .......... 14, 15

**Rules**

Federal Rule of Civil Procedure 8 .......... 1, 15

Federal Rule of Civil Procedure 12(b) .......... 4, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Samuel Dawkins allegedly reviewed four publicly available articles on the Citizens website, www.citizensbank.com (the "Website"). He does not allege that he is a Citizens customer, or that he logged into a Citizens account, or that he provided anything that identifies him or discloses any particular, much less sensitive, information about him. He alleges that while he browsed these articles, Citizens used ubiquitous analytics and marketing tools supplied by third parties to collect his Website interactions without his knowledge—a practice that Dawkins concedes is expressly disclosed in Citizens's Privacy Policy. Compl. ¶¶ 40-42. Based on Citizens's use of commonplace tools while Dawkins browsed publicly available articles on the Website, Dawkins seeks multiple awards of statutory damages, actual damages, restitution, and injunctive relief.

This case is one of *thousands* of CIPA suits pending in California state and federal courts attempting to advance the theory that a website operator's use of standard third-party technology in a way disclosed in its Privacy Policy to collect information on public websites from visitors is a statutory and common law privacy harm giving rise to thousands of dollars in statutory damages. The concrete harm requirement of Article III jurisdiction was intended to curb exactly the kind of boilerplate, rinse-and-repeat conclusory allegations that plaintiffs, like Dawkins, assert in these cases, attempting to characterize everyday technology as an intentional wiretap. Unsurprisingly, the Ninth Circuit, federal district courts within California, and this Court, have squarely rejected Dawkins's theory of harm allegedly arising from the collection of non-sensitive data while browsing a publicly accessible website. The "tracking of [Dawkins's] interactions with [Citizens's] website" is not "remotely similar" to the "concrete" harm required for standing. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791-792 (9th Cir. 2025). On these grounds alone, Dawkins's claims should be dismissed in their entirety.

If the Court reaches the merits of Dawkins's claims, which it need not do, they easily fail under Federal Rule of Civil Procedure 8. "[U]nderscoring all of the deficiencies" in the Complaint is Dawkins and his counsel's "serial litiga[tion] bringing numerous 'cookie cutter' lawsuits . . . against various businesses that operate websites." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059 (C.D. Cal. 2023) (C.D. Cal. Feb. 14, 2023). Here, the Complaint is one of two pending cases filed by Plaintiff with numerous *verbatim* identical allegations, essentially swapping out the names of defendants and specific URLs allegedly visited on a

defendant's website. Request for Judicial Notice, Ex. 7 ("RJN"). Moreover, Dawkins's Complaint is one of 11 filed by his counsel with identical claims and dozens of the same *verbatim* allegations. RJN, Exs. 1-10. Dawkins and his counsel are merely recycling the same "boilerplate allegations that Plaintiff's Counsel asserts against virtually every business he sues under CIPA." *Hot Topic*, 656 F. Supp. 3d at 1061.

Pleading deficiencies aside, dismissal without leave to amend is appropriate here, because Dawkins's claims suffer from fatal legal flaws that no facts can cure:

***First***, Dawkins's claim under the Wiretap Act fails because it is a "one-party consent statute," and thus, Citizens "is exempt from liability—regardless of whether [Dawkins] consented." *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025).

***Second***, Dawkins fails to state a claim under CIPA § 631 and the Wiretap Act because he does not allege that Citizens's technology providers intercepted any alleged interaction while "in transit." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025). Dawkins's CIPA § 631 claim fails for the additional reason that he alleges no facts showing that Citizens "acted with the requisite knowledge or intent to aid" its technology providers' "purported CIPA violation." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023).

***Third***, Dawkins's claim under California's Unfair Competition law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") fails because even when a plaintiff alleges his "personal data has a measurable monetary value," the purported "loss of personal data" does not suffice for UCL standing. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Even if it did, his claim should be dismissed under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Dawkins has not alleged the absence of adequate legal remedies and thus cannot assert a claim for relief under his UCL claim, which only provides equitable remedies. "Pursuant to *Sonner*," Dawkins's "UCL claim cannot proceed in this Court." *Reese v. Wal-Mart Assocs., Inc.*, No. 24-cv-1092, 2025 WL 472721, at *8 (E.D. Cal. Feb. 12, 2025) (Sherriff, J.).

***Fourth***, Dawkins fails to state claims for invasion of privacy and intrusion upon seclusion because "the mere act of accessing a website and browsing pages . . . cannot create a reasonable privacy expectation enforceable by California's privacy torts," and Citizens's alleged use of ubiquitous advertising tools to collect his "basic browsing history information" on "a public website is routine commercial behavior" that is "not highly offensive." *Rodriguez v. Accident Fund Holdings, Inc.*, No. 25-cv-3920, 2026 WL 2365062, at *7-8

(C.D. Cal. Aug. 13, 2026).

***Fifth***, Dawkins fails to state a claim for unjust enrichment because this claim is duplicative of his UCL claim and thus fails for the same reasons, including under the Ninth Circuit's *Sonner* decision.

Thus, the Complaint should be dismissed in its entirety and leave to amend should be denied.

## II. STATEMENT OF RELEVANT FACTS

### A. The Website

Dawkins alleges that Citizens Financial Group, Inc. and its subsidiary, Citizens Bank, N.A., jointly own and operate the Website. Compl. ¶ 2. Citizens offers "banking, lending, deposit, and financial-services products to consumers nationwide," but Dawkins is not a customer of any Citizens financial products. *Id.* ¶¶ 16-19, 39.

The Website provides publicly accessible articles on various topics, including debt management. *Id.* ¶ 39. Dawkins alleges Citizens used tracking technologies on the Website supplied by Google, Glassbox, Microsoft, Demandbase, and Qualtrics to track "page titles," "search-query parameters," "URLs identifying what the user is browsing," and "persistent user-level identifiers." *Id.* ¶¶ 8-12, 26, 46-98. According to Dawkins, Citizens allegedly uses these tools for its own "analytics" and for "marketing and promotional purposes." *Id.* ¶¶ 13, 41, 109.

### B. Dawkins's Claims

Dawkins alleges that he visited the Website on May 1, 2026. Compl. ¶ 15. He did not log into a Citizens account (he does not allege that he is a customer). Rather, Dawkins claims that he visited "public-facing" webpages on the Website for "debt management" and articles about "debt reduction," "credit-card-debt payoff strategies," "ways to reduce financial stress," and "budgeting" advice. Compl. ¶¶ 15, 26, 39, 40, 43. Dawkins does not allege entering any personal information, signing up for an account, filling out any forms, or making a purchase on the Website. Dawkins alleges no loss of money and no harm.

### C. Dawkins's Claims Are Part Of A Campaign Of Cookie-Cutter Lawsuits Filed By His Counsel.

Dawkins's claims against Citizens are not unique. According to Dawkins, the day after he visited the Website, he visited the website of another financial institution—Midfirst Bank—and browsed public-facing articles of the same nature, pertaining to debt and budgeting. RJN, Ex. 7. As with Citizens, Dawkins does not claim that he is a customer of Midfirst Bank, or that he provided anything personally identifying or sensitive to Midfirst Bank. *Id.* Not surprisingly, shortly after he sued Citizens over its alleged use of analytics and

marketing tools on the Website, he filed suit against Midfirst Bank over its use of the same tools, alleging the same claims as he alleges against Citizens. *Id.* As here, he alleges no loss of money and no harm from his browsing the Midfirst Bank website.

Moreover, Dawkins's claims against Citizens are substantially similar to the claims in ten other lawsuits that his counsel has filed since April 2, 2026, against other banks and financial institutions. *Id.*, Exs. 1-6, 8-10. For instance, in *Elmarouk v. FMR LLC*, No. 3:26-cv-02876 (N.D. Cal. Apr. 2, 2026), ECF No. 1 ¶¶ 2, 35, the plaintiff allegedly navigated to articles on debt, asserting identical causes of action as Dawkins alleges here. RJN, Ex. 1. Similarly, in *Erakat v. U.S. Bank, N.A. et al.*, No. 2:26-cv-01370 (E.D. Cal. Apr. 6, 2026), ECF No. 1 ¶¶ 2, 17-18, 39, Dawkins's counsel again brought identical claims, alleging that the plaintiff visited articles on the defendant's website on debt management. RJN, Ex. 2. In *Erakat v. Wells Fargo & Co.*, No. 2:26-cv-01353 (E.D. Cal. Apr. 6, 2026), ECF No. 1 ¶¶ 2, 17-18, 38, Dawkins's counsel again asserted identical claims against yet another financial institution, alleging that the plaintiff navigated to debt-related articles on the defendant's website. RJN, Ex. 3.

**D. Citizens's Privacy Policy Expressly Discloses The Use Of Technology That Dawkins Complains Of.**

Dawkins's allegations belie his insinuations of nefarious conduct by Citizens. Dawkins admits that Citizens's Privacy Policy discloses that "Defendants collect from California visitors to the Website the visitor's browsing and search history"; and Citizens "share[s]" this information "with third-party service providers including advertisers and marketers," which is used for "marketing and promotional purposes to show California visitors advertisements for products and services tailored to the visitor's interests on social media and other websites." *Id.* ¶¶ 40, 41. Thus, according to his own allegations, Citizens disclosed exactly how it would collect, share, and use Dawkins's browsing information in its Privacy Policy.

## III. <u>DAWKINS HAS NOT ALLEGED AN ARTICLE III INJURY-IN-FACT</u>

**A. Standard For Motions To Dismiss Pursuant To Rule 12(b)(1)**

As "the party seeking to invoke the court's jurisdiction," Dawkins bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). To satisfy Article III, a plaintiff must establish that he suffered a "concrete and particularized and actual or imminent" "injury-in-fact." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (citation omitted). A "Rule 12(b)(1)

jurisdictional attack can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). On a facial attack, a court accepts as true only the "well-pleaded factual allegations" in a complaint. *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020).

**B. Constitutional Requirements For Standing**

To establish the "constitutional minimum" of standing, plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs must show "'they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id.* at 338 n.6 (citation omitted). An "injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Traditional tangible harms," such as physical harms, may qualify as "concrete injury." *Id.* at 425. So may certain "intangible harms," but only if they bear a "close relationship" to harms "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* Courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.*

**C. Dawkins Does Not Allege A Concrete Injury.**

Dawkins's claims arise from the alleged disclosure of the URLs of "public-facing" webpages he accessed on the Website on "personal finance topics." Compl. ¶¶ 3, 39, 40. The Ninth Circuit has confirmed that "URLs of web pages visited" are not the type of "sensitive" information sufficient to state the "concrete injury" required by Article III. *Popa*, 153 F.4th at 786, 790, 791. Regardless of whether Dawkins alleges a statutory violation (he does not), there is no "per se rule" that "greenlight[s]" standing merely by virtue of alleging the violation of a "privacy" statute. *Id.* at 794.

"[C]onsistent with *TransUnion*," there must exist a "close," "common-law analogue" for the plaintiff's asserted injuries for a plaintiff to establish Article III standing. *Id.* at 792, 794. The common-law claims to which Dawkins analogizes here are intrusion upon seclusion and unjust enrichment. Compl. ¶¶ 133, 139. To assess whether these alleged injuries are sufficiently "concrete," Dawkins must (1) "identify the 'specific personal information [he] disclosed that implicates a protectable privacy interest,'" and (2) show the "disclosure [of the information] would be 'highly offensive to a reasonable person.'" *Khamooshi v. Politico*

*LLC*, 786 F. Supp. 3d 1174, 1178, 1179-80 (N.D. Cal. 2025) (citations omitted) (rejecting standing based on asserted "invasion of privacy" and "unjust enrichment" theories of harm). Dawkins's allegations fail to satisfy either element.

### 1. Dawkins Alleges No Sensitive Information Giving Rise to Standing.

None of the information allegedly collected from Dawkins—URLs pertaining to "debt management" and public-facing articles on personal-finance and budgeting—is sensitive enough to give rise to a "protectable privacy interest," *id.*, as required to satisfy the "*TransUnion* framework" for standing. *Popa*, 153 F.4th at 793. Dawkins's own allegations confirm the non-sensitive nature of his browsing activity on the Website. None of the Website pages Dawkins visited implicate his personal or private information, much less his personal financial information, or anything plausibly sensitive pertaining to Dawkins. A generic interest in publicly available financial-literacy content is neither legally protected nor sensitive. On this basis alone, the Court should dismiss the case.

Under *TransUnion*, "standing in privacy cases based on browsing activity depends on whether the activity is private or personal enough," *e.g.*, "shopping for eating disorder services" may create standing, whereas "shopping for a football jersey" does not. *Doe*, 806 F. Supp. 3d at 1113 n.3. "Generally," Dawkins does "not have an expectation of solitude while browsing" online, as he "would certainly not have such an expectation within the four walls of a real-world store." *Garcia v. Blackhawk Network, Inc.*, No. 25-cv-7550, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026). "As many courts have found," the "'internet is not a place where users have a reasonable expectation of privacy,'" such that "the mere act of shopping online, even for intimate products"—which is not alleged here—does not create "a reasonable expectation of privacy." *Perez v. Romantix Online, Inc.*, No. 25-cv-2465, 2026 WL 1802589, at *2 (N.D. Cal. June 23, 2026) (citation omitted). And courts are even "less willing to find that users have a cognizable privacy interest in browsing data" where, as here, a defendant allegedly "collected [it] only while users interact with the website of the defendant company." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021).

This Court has held the same: "In determining whether alleged privacy intrusions bear such a relationship" to a traditionally recognized privacy tort, "courts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all." *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1143 (E.D. Cal. 2025) (Sherriff, J.) (quotation marks and citations omitted).

In *Wooten*, plaintiffs alleged that two website operators embedded "third-party trackers" to capture their email addresses, IP addresses, and "the fact that [the plaintiffs] visited the website," thereby enabling the third parties to "link users' identities across multiple websites" for "targeted advertising" purposes. *Id.* at 1141-43. This Court held the "collection and dissemination" of this information failed to "give rise to a concrete injury," because there is "no legally protected privacy interest" in such "quotidian" information. *Id.* at 1144.

As in *Wooten*, Dawkins's browsing of publicly accessible pages on the Website is not the type of "embarrassing, invasive, or otherwise private information" courts have "historically recognized" as establishing Article III standing. *Id.* at 1144-45 (quotation marks omitted) (citing, *e.g.*, *In re Facebook, Inc. Internet Tracking Lit.*, 956 F.3d 589, 598-99 (9th Cir. 2020)). Dawkins alleges that titles of the articles he accessed can be "linked to persistent cross-session user profiles" and "used for advertising targeting," Compl. ¶ 130, but courts routinely recognize (including this Court in *Wooten*), even when a plaintiff's online browsing data is allegedly "aggregat[ed]" by third-party technology providers and "matched" to "user profiles" to facilitate sending users targeted ads, such allegations do not transform a plaintiff's "browsing activity" and "device-fingerprint" information into cognizable harm. *Torres v. Seatgeek, Inc.*, No. 25-CV-07118-LB, 2026 WL 1495202, at *3-6 (N.D. Cal. May 28, 2026) (citing *Popa*, 153 F.4th at 791); *see also Rodriguez v. Culligan Int'l Co.*, No. 25-cv-225, 2025 WL 3064113, at *3, 5 (S.D. Cal. Nov. 3, 2025) (no standing based on the alleged use of "tracking beacons" that collected plaintiff's IP address, browser name, cookies, geolocation, email address, "ad IDs," and "social media identities" because "users have no right to privacy" in such "metadata"); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (same for browsing metadata used to "deanonymize" users and deliver "highly personalized" ads).

Further, Dawkins's boilerplate allegations that Citizens transmitted "legally protected financial information" are "insufficient to establish the necessary concrete injury." *Compare Straight v. Edfinancial Servs., LLC*, No. 26-cv-1807, 2026 WL 2087412, at *3 (N.D. Cal. July 20, 2026), *with* Compl. ¶ 121 (alleging Citizens transmitted "sensitive personal-finance browsing data"); *see also Herzman v. Smile Brands Inc.*, No. 25-cv-3400, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (plaintiff's "bare allegations that 'protected health information' and 'personally identifiable information' were disclosed" were "legal conclusions" that could not establish standing). "Allegations about what the [W]ebsite *could* capture, as opposed to what it *did* capture from [Dawkins], are insufficient to confer standing." *Schallert v. Laird Superfood, Inc.*, No. 25-cv-

12407, 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026).

Indeed, the only data elements that Dawkins plausibly alleges were acquired from him have been firmly rejected as not legally protected and, consequently, insufficient to confer standing. "In line with *Popa*," "no concrete privacy injury arises" when "tracking software monitors . . . rudimentary browsing activity," *Magliocca v. United Healthcare Servs., Inc.*, No. 25-cv-3388, 2026 WL 878694, at *3 (E.D. Cal. Mar. 31, 2026), such as the URLs for public webpages Dawkins accessed along with other associated metadata (user or cookie IDs associated with the trackers). The "mere collection of device-type data or browser metadata is insufficient to establish constitutional standing," and the "same holds true with respect to [Dawkins's] browsing and searching" on the Website, "as an internet search does not inherently reveal private or sensitive information about that user." *Malko v. GNC Holdings, LLC*, No. 26-cv-1833, 2026 WL 2218133, at *4 (C.D. Cal. July 29, 2026) (plaintiff lacked standing where third-party trackers acquired his browsing activities, including his entered search for a "pre-workout product," since "[m]erely looking for a health-related product does not necessarily reveal anything about Plaintiff's own health information").[1] As is the case here, "[Dawkins] does not allege that his name, mailing address, telephone number, email address, or the like were collected or linked to the data [Citizens] collected," and the "data [Citizens] did collect and disclose," such as "the URLs of the webpages [Dawkins] viewed," "are not 'directly linked to his name or other personally identifiable information.'" *Id.* at *3.

Even allegations that a defendant disclosed a plaintiff's searches for the "treatment of chlamydia" and "genital warts" on an "informational health" website—which is not what Dawkins searched for here—in combination with other "metadata associated with his visit," do not create the "legally protected privacy interest" required "for Article III standing," since "nothing about [those] searches indicate [they] were tied to" anything

[1] Similarly, in cases involving website users' browsing and searches for "health" information, courts have drawn a distinction between "sensitive" health-related information giving rise to standing (*e.g.*, allegations that "Plaintiff made a specific kind of appointment related to a specific type of medical condition") *versus* "simply searching for and viewing health related internet content," which does not rise to an "actionable injury" under Article III. *Campbell v. Select Med. Corp.*, No. 25-cv-11408, 2026 WL 2056651, at *3 (C.D. Cal. July 14, 2026). This distinction compels dismissal all the more so here, where Dawkins alleges that he merely browsed for "public-facing content," revealing only his generic interest in articles on "personal-finance topics." Compl. ¶ 39; *Schallert*, 2026 WL 1707585, at *5 (dismissing for lack of standing; observing "it is not clear that Defendant's website—a site where users . . . learn about and purchase products designed to support their health—is capable of capturing the type . . . information necessary to show a concrete injury"); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 860-64 (S.D. Cal. 2023) (no standing based on tracking "brows[ing] for different products" on "health and wellness" and "personal information," even where name and email address also allegedly disclosed).

deemed "sensitive," such as the plaintiff's "personal medical history." *Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2394, 2026 WL 497402, at *2, *5 (S.D. Cal. Feb. 23, 2026). The reasoning of *Maghoney* applies equally here. As in *Maghoney*, "[a]nyone from a schoolteacher writing a lesson plan" or a "researcher looking to analyze potential findings could enter these searches into an informational [ ] website" for articles on personal finance. *Id.* at *5. Without more, the bare collection or disclosure of interest in articles about personal finance is not legally protected and cannot give rise to an Article III injury. *See Shah v. Talentbridge, Inc.*, No. 26-cv-222, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026) (disclosure of browsing information that included the search "jobs no background check" held insufficient to confer standing, as the search revealed only a "generic" interest in "seeking a job without background checks"); *Shah v. Drexel Chem. Co.*, No. 26-cv-1605, 2026 WL 2602923, at *4 (C.D. Cal. Sept. 1, 2026) (same where "the search terms Plaintiff entered are generic and pertained to 'well-known' active ingredients," and did "not disclose any personal information about Plaintiff or his identity").

Dawkins alleges simply the "collection of interaction metadata from a visit to a public website," at which time he "did not purchase any products, submit any forms, or provide any personal information." *Magliocca*, 2026 WL 878694, at *3. "What remains is the tracking of metadata generated by a visit to a public [ ] site. Under *Popa*, this does not resemble any traditional common-law privacy tort." *Torres*, 2026 WL 1495202, at *4. Since Dawkins "did not buy anything, fill out a form, enter any personal or demographic information, or log in" to an account, his browsing is not the type of "sensitive data" that supports a "concrete harm." *Accident Fund*, 2026 WL 2365062, at *1-2, *8-9. Dawkins fails to "meet *Popa*'s threshold," and his claims should be dismissed. *Garcia*, 2026 WL 925028, at *4.

**2. Dawkins Alleges No Highly Offensive Conduct Required For Standing.**

Dawkins also fails to allege a concrete injury because disclosing his browsing information is not "highly offensive." *Garcia*, 2026 WL 925028, at *4. The disclosure of Dawkins's browsing data on a public website "to third parties" is "'routine commercial behavior'" and "not a 'highly offensive' intrusion" into his privacy. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citation omitted); *see, e.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1121, 1126 (S.D. Cal. 2023) (no privacy intrusion based on disclosure of browsing history for "prescriptions, diagnoses, and test results," page clicks, and Facebook ID, because

disclosing this information "on a public website is 'routine commercial behavior'") (citation omitted).[2]

In assessing whether a defendant's conduct "meet[s] the highly offensive bar" necessary for standing, courts recognize that "tracking technologies may result in highly offensive conduct" only when the information collected is "sensitive, for example health or financial information," or when the "scope" of the defendant's collection is "so broad" as to render it "highly offensive." *Garcia*, 2026 WL 925028, at *4-5. That is, the "routine collection of personally identifiable information" may become "highly offensive" where "*sensitive* personally identifiable information" is tracked, or where the defendants' tracking is carried out nefariously, such as by "disregard[ing] Plaintiff's privacy choices while simultaneously holding themselves out as respecting them." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (emphasis added) (quotation marks and citation omitted). None of these circumstances are present here.

This is simply not a case with "increased privacy implications at stake," *Rodriguez v. Brushfire Recs.*, No. 25-CV-9797, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025), such as where defendants "gather[ed] sensitive information" from the plaintiff. *Torres*, 2026 WL 1495202, at *4; *see also Timothee v. Meta Platforms, Inc.*, No. 25-cv-5106, 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026) ("disclosing that [plaintiffs] accessed food-resource information on a public website," including entering their addresses and answering "multiple questions" to determine their "financial hardship," is "not similar to revealing that someone applied for welfare and does not establish an injury-in-fact"). Absent allegations showing his "own financial information was disclosed," the Complaint does not "plausibly support [that the] disclosure of [Dawkins's] information was offensive." *Straight*, 2026 WL 2087412, at *3, 8 (citing *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019) (affirming standing for the allegedly unauthorized disclosure of plaintiff's credit report containing his "credit standing, credit capacity," "general reputation" and "personal characteristics" about him)).

Dawkins also does not allege, and cannot allege, that the "scope" of Citizens's alleged tracking was "so broad" that it was "highly offensive." *Garcia*, 2026 WL 925028, at *4. Cases where the alleged tracking was

[2] *See also, e.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (no actionable intrusion where the "supposed invasion of privacy essentially consisted of [defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements," but such "conduct is . . . routine commercial behavior"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal. 2024) (same where plaintiffs "used Defendant's Website for routine medical searches and inquiries"); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (same where defendant allegedly disclosed users' "personal identifying information, browsing habits, search queries" and other data, and such disclosure was "contrary to [defendant]'s own policies.").

held "highly offensive" involved "consumer profiles" containing users' "activity across browsing sessions and websites" that "were created by the [d]efendant," not by "non-parties" like Google, Microsoft Bing, and Qualtrics here. *Id.* The only defendant in *this* suit, however, is Citizens, and all Dawkins alleges is that Citizens's "tracking pixels that caused the user's browser to transmit certain data to third-party servers," but "only when the user visited [Citizens]'s website"; not a cradle-to-grave profile of Dawkins's browsing history across the Internet. *Dawidzik v. Tesla, Inc.*, No. 25-cv-1982, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (emphasis added).

Finally, Dawkins does not allege "any *actual* injury" because, though the trackers allegedly "have the capability" to engage in targeted advertising, he does not allege that *he* was "subject to" any "targeted advertising." *Wooten*, 807 F. Supp. 3d at 1145 (emphasis in original). "At best," Citizens's conduct "amounted to informing a third party about Plaintiff's interactions with its website." *Garcia*, 2026 WL 925028, at *5.

At bottom, Citizens's "routine collection" of Dawkins's data from "a visit to [its] website" is not highly offensive and does not establish an Article III injury. *Magliocca*, 2026 WL 878694, at *4 (citation omitted).

### 3. Dawkins's Remaining Theories Of Injury Fail.

Finally, Dawkins attempts to show standing for his UCL and unjust enrichment claims by alleging that Citizens was "unjustly enriched" by capturing his information, and that Dawkins was "deprived of the economic value" in his browsing data that he supposedly "bargained" for. Compl. ¶¶ 124, 139, 145.[3] These theories fail. Both require Dawkins to plausibly allege an "economic injury" caused by the disclosure of "legally protected" information carrying "financial value." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1191, 1192 (N.D. Cal. 2020) (citation and quotation marks omitted). He alleges no such injury.

To "allege an actionable injury under a benefit-of-the-bargain theory," Dawkins "'must show that [he] did not receive a benefit for which [he] actually *bargained*.'" *Malko*, 2026 WL 2218133, at *5 (emphasis in original) (quoting *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020)). "This conclusory allegation is insufficient to establish" that Citizens's "collection practices were otherwise a part of the bargain between the parties." *Id. Malko*, 2026 WL 2218133, at *5; *cf.* Compl. ¶ 124. Furthermore, courts have consistently "found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged

[3] "The remedy of restitution seeks to correct unjust enrichment." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994). Thus, even if Dawkins had an injury "similar to unjust enrichment," his "standing would be limited to seeking restitution rather than damages." *Dawidzik*, 2025 WL 3786963, at *6 n.4 (citing *TransUnion*, 594 U.S. at 436 (plaintiffs must "demonstrate standing separately for each form of relief sought")).

value of personal information." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015).[4] Dawkins's Complaint contains "no allegations about the potential monetary value" of his Website browsing information "nor any theory for how (or to what degree) the value of that information decreases when [Citizens] tracks it on [its] website." *Carolus v. Nexstar Media Inc.*, No. 24-cv-7790, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025); *see Sisti v. Bosley Inc.*, 831 F. Supp. 3d 979, 988 (C.D. Cal. 2026) ("although the FAC explains at length that 'consumer data' has value to third party data aggregators," no standing because plaintiff did not articulate how his data became "less valuable" or resulted in "an impairment in his ability to sell his own data").

Just as specious is the allegation that Citizens was "unjustly enriched" by Dawkins's data, Compl. ¶ 143, which is wholly conclusory and cannot show an injury-in-fact without "facts plausibly demonstrating how [Citizens's] profits were unjustly earned," *Heeger*, 509 F. Supp. 3d at 1191. Apart from failing to plead the requisite facts, this theory of harm fails because "[Dawkins] fails to establish an actionable injury to his privacy interest," as is required to show that "any profit [Citizens] earned from his data was unjust." *Malko*, 2026 WL 2218133, at *5. To allege unjust enrichment, Dawkins must plead facts showing "(1) [Citizens]'s actions were unjust, and (2) as a result, [Citizens] was enriched"—elements that cannot exist where Dawkins "had no legally protected privacy interest" in the information collected. *Khamooshi*, 786 F. Supp. 3d at 1182, 1183 (citations omitted); *see also Torres*, 2026 WL 1495202, at *6 (no standing because "plaintiff has not plausibly pleaded a privacy interest in the information" that "might render any enrichment unjust"). And Dawkins likewise alleges nothing to suggest that any enrichment was conferred through "fraud" or "coercion," as he must to show it was "unjust," *Dawidzik*, 2025 WL 3786963, at *5; to the contrary, he alleges that Citizens disclosed the practices that he complained of. Compl. ¶¶ 40-42. "Just as a retailer might profit from the use of home addresses without being unjustly enriched," Dawkins has "not shown why [Citizens's] use" of his information "was unjust." *Khamooshi*, 786 F. Supp. 3d at 1183.

Accordingly, the Court should dismiss Dawkins's Complaint for failure to allege any Article III injury.

---

[4] For instance, Dawkins does not claim that he "personally lost the opportunity to sell [his] information," nor does he offer any theory by which "the value of [his] information was somehow diminished after it was collected." *In re Facebook*, 140 F. Supp. 3d at 931-32; *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (rejecting diminution-in-value theory where plaintiff did not allege "how he was foreclosed from capitalizing on the value of his personal data") (citation and quotation marks omitted).

## IV. DAWKINS FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

### A. Standard For Motions To Dismiss Pursuant To Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Courts must generally accept a plaintiff's factual allegations as true in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Citizens's Consent Requires Dismissal of Dawkins's Wiretap Act Claim.

The Wiretap Act precludes liability "where 'one of the parties to the communication has given prior consent' to the interception." *Roe v. Amgen Inc.*, No. 23-cv-7448, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (quoting 18 U.S.C. § 2511(2)(d)). Citizens's undisputed consent to the use of tracking tools on its Website bars this claim. *See, e.g.*, Compl. ¶ 41; *Roe*, 2024 WL 2873482, at *6.

Dawkins's allegations also do not show that the crime-tort exception to the Wiretap Act's one-party consent provision applies. *See* 18 U.S.C. § 2511(2)(d). To invoke the exception, Dawkins must plead the intercepting party had "the independent criminal or tortious purpose" for intercepting interactions "at the time the [interception] was made." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). As numerous courts have recognized, the crime-tort "exception is inapplicable" where the intercepting party's "motivation is to make money rather than to injure plaintiffs tortiously or criminally." *Roe*, 2024 WL 2873482, at *6; *see Doe I*, 741 F. Supp. 3d at 843 n.4 (exception did not apply because "Google's purpose in offering these products 'has plainly not been to perpetuate torts on millions of Internet users, but to make money'"). Having alleged that Citizens's purpose of any interception was to "generate[ ] commercial revenue and business value," Compl. ¶¶ 42, 142, *i.e.*, "to make money," Dawkins has "failed to meet [his] burden to show that the crime-tort exception applies." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025).[5]

[5] The "focus" of the exception is "not upon whether the interception violated another law," as Dawkins alleges here, Compl. ¶ 75, but whether "the *purpose* for the interception" was "criminal or tortious." *Sussman v.*

**C. Dawkins Fails To Allege A Wiretapping Claim Under The Wiretap Act Or CIPA § 631.**

**1. The First Clause Of CIPA § 631(a) Does Not Apply Online.**

Section 631(a) of CIPA prohibits "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978).[6] "[T]he first clause does not apply to internet communications . . . ." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123 n.8 (C.D. Cal. 2024). Thus, Dawkins has no claim against Citizens under the first clause of Section 631(a) based on the use of third-party technology on its Website.

**2. Dawkins Does Not Allege That Citizens's Providers Intercepted A Communication While "In Transit" In Violation Of The Wiretap Act And The Second Clause Of CIPA § 631(a).**

Courts have long recognized that the analysis for "a violation of CIPA [§ 631(a)'s second clause] is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

Dawkins's Wiretap Act and Section 631(a) claims fail because he alleges no facts plausibly showing that Citizens's technology providers intercepted his interactions while "in transit," as required under both statutes. *E.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (the "in transit" requirement under CIPA and the Wiretap Act is the same). An interception is actionable only if a plaintiff alleges the interception occurred "while the [communication] is in transit. . . . 'While' is the key word here." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). The "crucial question" is whether a third party allegedly intercepted the communication "before it reached its intended recipient." *Crano v. Sojern, Inc.*, No. 25-cv-2600, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025); *see also, e.g.*, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (For a communication "to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage.").

Dawkins alleges that each tracker intercepted users' interactions "in real time, while those interactions are in transit between Plaintiff's browser and the Website's servers," Compl. ¶¶ 97-98, but this conclusory

---

*Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (citation omitted). Thus, "[a]llowing [Dawkins] to bootstrap an alleged CIPA violation to invoke the Crime-Tort Exception" would "allow the exception to swallow the rule." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 24-cv-6525, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025).

[6] Dawkins is not asserting a claim for direct liability under CIPA; rather, his claim is premised on Citizens's aiding and abetting a violation of the first three clauses of CIPA by its technology providers. *See* Compl. ¶ 109. And for good reason—as a "party" to Dawkins's alleged interactions, Citizens is "exempt" from direct liability under CIPA. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("Only a third party can listen to a conversation secretly" in direct violation of CIPA § 631.).

assertion alleges no *facts* showing how his interactions were intercepted "*before* [Citizens] received" them. *Valenzuela v. The Kroger Co.*, No. 22-cv-6382, 2024 WL 1336959, at *2 (C.D. Cal. Mar. 28, 2024) (emphasis in original) (allegation that technology intercepted interactions "in real time" was entirely speculative). Rule 8 requires facts, not conclusions masquerading as facts. *See, e.g.*, *Licea*, 659 F. Supp. 3d at 1084 (allegation of interception "during transmission and in real time" is "conclusory and does not allege specific facts as to how or when the interception takes place").

Further, under CIPA, courts have recognized that "[e]ven if [the] software intercepts the contents of [his] communications in real time," Dawkins fails to allege facts that "plausibly indicates that [a third party] *reads or attempts to read* the contents of the communication *while they are in transit*." *Torres v. Prudential Fin., Inc.*, No. 22-cv-7465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (emphasis added). The "in-transit" requirement is "not satisfied when a third-party company intercepted communications and stored them in a server because the company didn't actually read or attempt to read the communications while they were in transit." *Doe*, 806 F. Supp. 3d at 1116. Said another way, to violate the statute, "you have to do something more than just intercept the contents of the communication or redirect them to yourself during the virtually infinitesimal amount of time it takes for the communication to travel from the website visitor to the website operator." *Id.* Dawkins makes no attempt at satisfying this requirement.

Dawkins alleges no facts that would support an inference that Citizens's technology providers intercepted—much less read or attempted to read in violation of CIPA—his browsing interactions *before* Citizens received them, requiring dismissal of his claims under the Wiretap Act and the second clause of CIPA § 631(a). *E.g.*, *Heiting*, 709 F. Supp. 3d at 1019.

**3. With No Claim Under CIPA § 631(a)'s First Or Second Clause, Dawkins Cannot Assert A Claim Under The Third.**

Dawkins has not alleged a violation of the third clause of Section 631(a) because he does not allege a "violation of clauses one or two." *Crano*, 2025 WL 2689267, at *7.

**4. Dawkins Does Not Allege Unlawful Knowledge Or Intent By Citizens Under CIPA § 631(a).**

A "fourth basis for liability" exists under Section 631(a) for anyone who "aids, agrees with, employs, or conspires with any person" that has directly violated the statute under any of "the three bases for liability."

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021); Compl. ¶¶ 108-109.[7] Because Dawkins fails to allege a third party's direct violation of Section 631(a), he cannot show Citizens is liable for aiding and abetting under the statute. *See Keurig*, 674 F. Supp. 3d at 759. Nonetheless, even if Dawkins had alleged a direct violation of Section 631(a), this basis for liability still fails because the Complaint lacks "sufficient facts" showing that Citizens "*knew* the perpetrator intended" to violate the statute and, bearing this knowledge, that Citizens "*intended* to aid and abet the perpetrator in committing the crime." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102, 2024 WL 3761293, at *2-3 (S.D. Cal. Aug. 5, 2024) (emphasis in original). It is not enough to have simply "allowed" a third party to "captur[e]" users' data. *Kroger Co.*, 2024 WL 1336959, at *4. Rather, a complaint must include "plausible allegations" explaining that the defendant "knew" the third party's interception "constituted a breach" of the statute. *Id.*; *see also Heiting*, 709 F. Supp. 3d at 1016, 1019 (same).

Here, Dawkins alleges no facts plausibly suggesting Citizens had the requisite knowledge or intent to aid a third party's violation of CIPA. Rather, he merely concludes that Citizens "aided and abetted" the third-party technology. Compl. ¶¶ 54, 65, 75, 84, 93. But recitations of the legal elements of his claim are not *facts* that Citizens "knew" of the alleged subsequent launch of cookies, purportedly in "breach of some duty." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024). Dawkins does not allege what Citizens supposedly knew about any unlawful interception, when Citizens acquired that knowledge, who possessed it, or how Citizens intended to facilitate a violation of Section 631. The Complaint alleges only that Citizens embedded analytics and marketing technologies on its Website. With no "factual allegations, no plausible inference can be drawn that [Citizens] knowingly aided or assisted [third parties], in violation of § 631(a)." *Smith v. YETI Coolers, LLC*, No. 24-cv-01703, 2025 WL 877127, at *2 (N.D. Cal. Mar. 14, 2025).

**D. Dawkins's UCL Claim Fails Because He Does Not Allege the Loss of "Money or Property."**

To bring a UCL claim, a plaintiff must have statutory standing, which is distinct from Article III standing. *Mastel*, 549 F. Supp. 3d at 1144. To have statutory standing under the UCL, a plaintiff "must establish that [he] (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition."

[7] Unlike CIPA, "there is simply no secondary liability (such as aiding and abetting) under the [Wiretap Act]." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015); *see also In re Blue Shield of California Priv. Litig.*, — F. Supp. 3d —, 2026 WL 2040561, at *7 (N.D. Cal. Jul. 10, 2026) (holding same and observing "Plaintiff's procurement-based theory of liability is not cognizable," as courts "have routinely found that defendants cannot be civilly liable for procuring or aiding and abetting interceptions by third parties.").

*Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code § 17204). A plaintiff has not "lost money or property" merely because a plaintiff's data is valuable in the abstract and a defendant made money from it. *See, e.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property."); *Low*, 900 F. Supp. 2d at 1030 (explaining that the "weight of authority" holds that a plaintiff's personal information does not constitute property under UCL).

Dawkins claims Citizens received an "economic benefit" from the alleged disclosure of his data, Compl. ¶ 124, but he alleges nothing showing that *he* lost money or property as a result. *See supra*, § III.B.3; *Roe*, 2024 WL 2873482, at *8 (Although plaintiffs "point the Court to reports describing the economic market for consumers' personal data," plaintiff's "[] 'vague allegations that personal information in some instances has monetary value' is insufficient for Plaintiff to allege a loss" under the UCL).[8] Dawkins does not plead facts showing that any interest in his data has been diminished, alleging instead only boilerplate assertions that he was "deprived of the economic value of [his] data" and of the "full value of a privacy-protective browsing experience [he] reasonably expected" and "bargained" for. Compl. ¶ 124. This threadbare allegation does not state a claim. *See Folgelstrom*, 195 Cal. App. 4th at 994 (dismissing UCL claim because "even if plaintiff had an intellectual property interest in his [data], he does not explain how that interest has been economically diminished by [defendant]."). Finally, any alleged economic benefit by Citizens does not equate to Dawkins's economic injury. *Bass*, 394 F. Supp. 3d at 1040. Thus, Dawkins's UCL claim should be dismissed on this ground alone.

This claim also fails under *Sonner*. *See* 971 F.3d at 844. Under *Sonner*, a plaintiff "must establish that [he] lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL . . . ." *Id.* (affirming dismissal of UCL claim because plaintiff did not allege she lacked an adequate legal remedy); *Morales v. Conifer Revenue Cycle Sols., LLC*, No. 23-cv-01987, 2025 WL 1096396, at *9 (C.D. Cal. Mar. 31, 2025) (dismissing complaint under *Sonner* because plaintiff "failed to plead that he lacks an

[8] *See also In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) (Allegation that plaintiffs "were harmed both by the dissemination of their personal information and by losing the sales value of that information" was insufficient to state a UCL claim because "plaintiffs failed to allege that 'they lost money or property as a result of the unfair competition.'"); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614–15 (9th Cir. 2021) (emphasis in original) ("Although the studies cited by [plaintiff] establish that personal information may have value in general, [plaintiff] failed to adequately allege that her personal information actually lost value. Several courts in this Circuit have found, and we agree, that the 'mere misappropriation of personal information' does not establish compensable damages.").

adequate remedy at law as required to seek any claims for equitable remedies"). Under *Sonner*, dismissal of UCL claims with prejudice is proper where other actual or potential claims *could* provide money damages—even where those legal claims failed as a matter of law. *See, e.g.*, *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (collecting authorities) (dismissing UCL claim with prejudice based on adequate remedy at law; "[i]t matters not that a plaintiff may have no remedy if her other claims fail").

Dawkins's UCL claim fails under *Sonner* for the independent reason that he fails to allege why damages would be inadequate. *Cf. Reese*, 2025 WL 472721, at *8 (dismissing UCL claim "[p]ursuant to *Sonner*" because plaintiff's "single allegation that legal remedies would be inadequate to redress this claim is conclusory"). Under *Sonner*, the issue is "whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) (citing *Sonner*, 971 F.3d at 844).[9] Dawkins alleges nothing about the inadequacy of damages here. He has "made no showing that [he] [is] entitled to injunctive relief as [he] [has] alleged no continuing or imminent injury." *Sharma*, 524 F. Supp. 3d at 908. Thus, the UCL claim fails for this reason as well.

**E. Dawkins's Invasion of Privacy And Intrusion Upon Seclusion Claims Fail.**

Claims for invasion of privacy under the California Constitution and intrusion upon seclusion have similar elements, and for this reason are analyzed together by courts. *Hammerling*, 615 F. Supp. 3d at 1088. Both require a "reasonable expectation of privacy" that a defendant intrudes upon in a "highly offensive" manner. *Id.* The "highly offensive" standard limits these claims to invasions of privacy that are "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 26, 37 (1994). This is a "high bar" that excludes *de minimis* intrusions. *Belluomini v. Citigroup, Inc.*, No. 13-cv-1743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). When, as here, allegations "show no reasonable expectation of

---

[9] "Under *Sonner*," Dawkins "cannot seek equitable relief absent *plausible* allegations that [he] lack[s] an inadequate legal remedy." *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 649 (C.D. Cal. 2021). And no plausible allegation is possible here where Dawkins seeks the *same* recovery in legal damages and in restitution. *Compare* Compl. ¶ 124, Prayer for Relief ¶ 7 (asserting restitution under the UCL because Dawkins allegedly was "deprived of the economic value" of his data "without compensat[ion]"), *with* Compl. ¶ 138 (asserting compensatory damages for intrusion-upon-seclusion claim based on the alleged "exploitation of [Dawkins's] personal information"); *see Sanchez v. Sams W., Inc.*, No. 21-cv-5122, 2021 WL 8531592, at *4 (C.D. Cal. Dec. 23, 2021) ("*Sonner* is clear: a plaintiff cannot recover under the UCL unless his legal remedies are inadequate," and "Plaintiff has failed to offer any allegation whatsoever as to why his remedies at law would be inadequate given that he can recover . . . in legal damages as he could in equitable restitution.").

privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Low*, 900 F. Supp. 2d at 1025. For the same reasons he fails to allege a concrete privacy injury, Dawkins has not met his pleading burden for his invasion of privacy and intrusion upon seclusion claims.

***First***, Dawkins's claims fail because he has no reasonable expectation of privacy in the data he alleges was captured. Dawkins does not allege facts showing anything sensitive was shared, *see supra*, § III.C.1; *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104, 1108 (9th Cir. 2014) (no "expectation of privacy" in "record information" that is not "content," like "the address of the Facebook webpage the user was viewing" or a user's "name, address, and subscriber name or identity"). "[A]ccessing a website and browsing pages" does not create a "reasonable expectation of privacy that no information will be collected." *Accident Fund*, 2026 WL 2365062, at *7.

***Second***, courts have held that "[t]he collection and disclosure of a user's browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive.'" *Cousin*, 681 F. Supp. 3d at 1126 (citation omitted); *see also B.K.*, 721 F. Supp. 3d at 1064, 1067 (no "highly offensive" conduct for disclosure of plaintiffs' "routine medical searches and inquiries"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device IDs and geolocation information); *supra*, § III.C.2. (collecting authorities).

Thus, Dawkins has not stated an invasion of privacy or intrusion upon seclusion claim.

**F. Dawkins Fails To Allege Unjust Enrichment.**

Dawkins's unjust enrichment claim must be dismissed because "unjust enrichment is not a cause of action under California law." *Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) (quotation marks and citation omitted); *see Frye v. Ass'n of State & Provincial Psych. Boards*, No. 25-cv-236, 2026 WL 861636, at *2 (E.D. Cal. Mar. 30, 2026) (Sherriff, J.) (adopting magistrate's ruling dismissing claim for unjust enrichment because it is "neither a proper cause of action nor a remedy").

If it were a claim, Dawkins's allegations would nonetheless fail for the same reason that Dawkins's Complaint lacks allegations of a concrete injury. *Supra*, § III.C.3.

Further, if unjust enrichment is a claim, it fails here because it is duplicative of Dawkins's other claims, which likewise fail. *See Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1027 (C.D. Cal. 2024) (where unjust enrichment claim was premised on the "same factual allegations" as the plaintiffs' "other

claims," the "unjust enrichment claim [was] dismissed as duplicative"); *Doe I*, 741 F. Supp. 3d at 849 (because "plaintiffs have not stated a claim against Google for any unlawful conduct, they have also failed to state an unjust enrichment claim"). Dawkins's other claims arise from the alleged "loss of privacy" and "unauthorized exploitation" of his "personal information," *e.g.*, Compl. ¶¶ 121, 131-132, 137-138, and he asserts unjust enrichment based on allegations that Citizens and its technology providers "extracted the commercial value of that data without compensation," *id.* ¶ 143.

Finally, any claim for unjust enrichment by Dawkins fails under *Sonner*. *E.g.*, 971 F.3d 834, 838, 844 (affirming dismissal of equitable relief because plaintiff did not allege "she lacked an adequate legal remedy"); *supra*, § IV.E.[10]

## V. CONCLUSION

Citizens respectfully requests that the Court dismiss the Complaint without leave to amend.

Dated: September 10, 2026

GREENBERG TRAURIG, LLP

By: */s/ Rebekah S. Guyon*
Rebekah S. Guyon
Attorneys for Defendants
Citizens Financial Group, Inc., and
Citizens Bank, N.A.

[10] Even if Dawkins did allege "that legal remedies would be inadequate to redress this claim," a threadbare allegation would on its own be "conclusory." *Reese*, 2025 WL 472721, at *8. And "[u]nder *Sonner*," Dawkins "cannot seek equitable relief absent *plausible* allegations that [he] lack[s] an adequate legal remedy." *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 649 (C.D. Cal. 2021).